SUBCONTRACT

NO. 129-920300

THIS AGREEMENT, made this 14<u>th</u> day of <u>March, 2005,</u> by and between <u>S.E. Foster Construction Company</u> hereinafter called "Contractor," <u>Spartan Electric Company,</u> hereinafter called "Subcontractor,"

WITNESSETH:

WHEREAS, Contractor has heretofore entered into a contract dated <u>February 9, 2005</u> with <u>Columbia Heights Ventures Parcel 15, LLC</u> hereinafter called "Owner," to perform certain labor and furnish certain material for the erection, construction and completion of <u>the Kenyon Square Condominiums Parcel 15 Project</u> as per plans and specifications, prepared by <u>Torti Gallas and Partners, Inc.</u> hereinafter referred to as "Architect," as follows:

all of which are made a part of said contract and all of which are now made a part of this subcontract; said contract, plans, specifications, addenda and other documents above set forth being hereinafter referred to as the "Contract Documents"; and **Exhibit One, Two and Three**

WHEREAS, the parties hereto desire to contract with reference to a part of said work:

NOW THEREFORE, for and in consideration of the mutual and reciprocal obligations herein contained, it is agreed as follows:

1. Subcontractor shall furnish and pay for all labor, services, costs (including but not limited to sales, use, personal property and transportation taxes), and materials and perform all of the work necessary or incidentally required for the completion and testing of that part of the work covered by the Contract Documents, as follows:

1.(a). FURNISH all labor, materials, equipment, supervision, services, appliances, and accessories required for the complete installation of <u>all electrical work</u>. Addenda: N/A and Alternates: N/A.

1.(b). SUBCONTRACTOR has examined other sections of plans and specifications and has included all items necessary for the coordination of other trades applicable to the <u>division sixteen electrical specifications</u>. Section(s):

1.(c). NOTWITHSTANDING any other provision of this subcontract, Subcontractor shall guarantee his work against all defects of material and workmanship, and guarantees that the work will be in strict compliance with the Contract Documents for a period of <u>two (2) years</u> from the date of the Owner's final acceptance of the entire project. In addition, Subcontractor shall provide all other guarantees required by the Contract Documents and those implied by law.

1.(d). SUBCONTRACT includes all <u>material, labor, equipment, supervision, and coordination</u> required to complete the full intent of the plans and specifications regardless as to where shown or specified and to provide a complete and acceptable system unless specifically exclude in Paragraph 1.(e). To the extent the Contract Documents are defective, ambiguous or incorrect, the Subcontractor's scope of work shall be considered to provide a complete and workable system for the work described herein, but not limited to the following:

Perform all electrical work for the 153 unit condominium building including, but not limited to the following scope items:

1. Temporary electrical and lighting including building temporary lighting, power outlets as required by site superintendent, elevator working platforms power, power for temporary construction facilities including power and temporary lights for tower crane and hoists, all other normal lighting and wiring for construction purposes with maintenance during normal working hours. All necessary work/equipment for transforming street current for use by tower crane or if not possible then running conduit/cable from generator. General Contractor shall supply the generator.
2. Hook-up of all equipment and appliances is included.
3. Furnish, install and wire all light fixtures for the project as specified per the following:
   a) Common areas per the Interior Design Drawings.
   b) Units per layouts sent with the Architect's 7/23/04 transmittal.
   c) Street lights and site lighting per the 12/21/04 Landscape Plans.
   d) All other exterior, garage and common areas fixtures per the General Area Lighting Fixture Schedule shown on drawings E101 dated 12/6/04.
   e) Trenching, compacted backfill, conduit, wire, light pole bases and concrete are specifically included where required for site lighting and street lights.
4. Provide conduit in exterior wall per 1+2/E301 for secondary duct banks outside of building to be provided by others.
5. Furnish all necessary electrical access doors as required by code.
6. Furnish the necessary labor, equipment and materials to seal all openings caused by their trades. Methods used to seal openings shall conform to code requirements and specifications.
7. Include the necessary labor, materials, and equipment to furnish and install conduit pipe hangers and supports as required for equipment and material furnished under this Subcontract.

Exhibit 1

8. Include all sprinkler alarm and fire pump hook-ups, wiring and final connections, as required for a complete system. Sprinkler subcontractor's transfer switch to be reduced-voltage start.
9. Fire alarm drawings will be completed and submitted to Fire Marshall in a time frame that allows time for review without delaying the job schedule.
10. Include furnishing and installing all smoke detectors (furnish duct smoke detectors to be installed by mechanical subcontractor) and a complete mid-rise fire alarm and fire annunciator system meeting local code requirements. This Subcontractor shall design and coordinate fire alarm system with Fire Protection Subcontractor, Elevator Subcontractor and monitoring subcontractor to allow for completion on a per floor basis.
11. Include all power wiring for mechanical trades including all power hardware devices whether shown on plans or not.
12. All branch circuits shall be "AC Cable" (types BX, MC of HFC, as applicable) installed as allowed by and in accordance with the National Electric Code and local Jurisdictions. All feeder conductors shall be installed in EMT conduit. Residential feeders to be aluminum MC cable.
13. Include the power wiring and conduit for the garage entry gate operators.
14. Include all stencils and tags for identification and panel circuit identifications.
15. Include furnishing, installing and wiring of the 275KW emergency generator. This subcontractor will supply muffler, it will be installed by others. Fuel oil piping, tank, and exhaust piping is by others. Generator and ATS to include all necessary power pre-transfer signals to elevator controller (by others).
16. Structured telephone and CATV system in the units consisting of multi-media connection panel, telephone and CATV outlets and cabling, and home run horizontal cable runs back to the electrical telephone closets on each floor. Conduit for these home runs is specifically excluded as is telephone and CATV system backbone (vertical risers) cabling and equipment.
17. Telephone service conduit as shown within the building is included. Subcontract includes placement of sleeves for CATV and telephone risers.
18. Exit lights and fire alarm device counts and locations are limited to what is shown on contract documents.
19. Electrician to furnish and install all conduits as shown for security Subcontractor.
20. Electrician is responsible for providing receptacles for garbage disposals, dishwashers, refrigerators, ranges, washers/dryers and microwaves, which are to be plug in type.
21. Electrician specifically includes all coordination with mechanical, plumbing, fire protection, security and elevator Subcontractors to provide a complete operational and acceptable system.
22. Include record "As-Built" drawings and operation and maintenance manuals as required for all systems.
23. Coordinate all work with other trades including precast and masonry subcontractors for exterior lighting.
24. All conduits in parking areas to be installed to allow for maximum head room. No conduit to be installed below seven feet above finished floor or 8'-2" in handicapped van accessible drive isles.
25. Three copies of rough-in box and sleeve location drawings to be provided to General Contractor at least six (6) weeks prior to scheduled installation. Drawings to include dimensions from control lines to all rough-in boxes and sleeves to be installed in the slab.
26. Subcontractor is responsible for costs to core drill and X-Rays if sleeves are missed. Core drilled alternate sleeve locations are to be approved by Structural Engineer prior to installation.
27. During installation of fixtures, any cutting and repair of drywall and painting will be charged accordingly to the responsible trade.
28. Subcontractor is responsible for material and installation of heat trace in areas as required per plans and specifications.
29. Subcontract includes wiring and supply of power to HVAC equipment and Building Automation System.
30. Subcontractor will supply, maintain and replace light bulbs in temporary and permanent fixtures as directed by Contractor's Project Superintendent.
31. Maintain adequate temporary power and phone hook-up for General Contractor's construction trailer. One move will be required during the course of construction.
32. Subcontractor includes dewatering of rainwater only as it pertains to his work.
33. Subcontractor will provide flagmen for traffic control for his work only, per District of Columbia & local jurisdictional standards.
34. Subcontractor shall be responsible for keeping streets clean during their delivery of materials and equipment, per District of Columbia & local jurisdictional standards.
35. Subcontractor will perform housekeeping duties at all work areas daily. Subcontractor will clean up all waste and materials, rubbish and debris resulting from his own on a daily basis or as required by General Contractor. This debris is then to be removed daily to General Contractors Dumpster.
36. Subcontractor will include a line item on the schedule of values equal to 1 ¼% of the contract amount specifically for clean up. These monies are to be drawn monthly.
37. Subcontractor is responsible for fill in of unused sleeves, the repair, patch or replacement of marred surfaces that are damaged by his own operations.
38. Subcontractor will include a line item on the schedule of values equal to 1 ¼% of the contract amount specifically for punch list. These monies are to be drawn as punch list is completed.
39. Subcontractor includes three (3) (General Contractor, Architect and Owner) punchlists.
40. Subcontractor will provide a separate hourly foreman and employee or employees to manage and perform punch list.
41. Subcontractor to contribute 1 man or 1 per 25 workmen to weekly composite cleanup crews each Friday for 8 hours to remove undefinable debris. This provision does not relieve the Subcontractor of their cleaning responsibilities included in Article 1.(f) below.
42. Subcontractor's superintendent will attend weekly progress meetings for coordination of schedule, quality control, issues, and punch list.

43. Subcontractor's project manager will attend a weekly progress meeting at least one time per month or as requested by General Contractor's Superintendent.
44. Subcontractor shall provide General Contractor with a copy of Subcontractors Safety Program and name of Safety Program Representative.
45. Subcontractor shall provide General Contractor with a copy of Subcontractors Quality Control Program and name of Quality Control Representative.
46. Subcontractor shall reinstall any barricade, sign, fence, safety rail, safety cable or other temporary structure removed for his operations immediately upon completion of those operations, or at the end of each day, which ever comes first.
47. Subcontractor shall provide a minimum of 24-hour notice for all deliveries.
48. Subcontract includes hourly supervision of all pieceworkers when they are performing work.
49. Subcontractor will be responsible for his employees parking (if it is not available on site as determined by the General Contractor's Superintendent).
50. Subcontractor's field representative shall have a copy of these contract documents on site at all times.
51. Coordinate all deliveries and storage areas with General Contractor's Superintendent.
52. Subcontract includes adequate manpower to comply with project CPM schedule. Schedule is based on a 40-hour, 5-day work week. Lost days due to weather during this time are expected to be made up on Saturday at no additional cost to General Contractor.
53. The General Contractor will provide a datum benchmark for the use of all Subcontractors.
54. Subcontractor shall layout all work required to complete his particular work unless otherwise stated per General Contractor's Superintendent.
55. Subcontractor shall be responsible for field measuring existing conditions prior to fabrication of materials and/or equipment which fit into restricting spaces. It is the responsibility of the Subcontractor to determine if, and to notify the General Contractor of, conflicts with this work and plan dimensions and/or other work exists.
56. Subcontractors requiring protected storage for materials, equipment, tools, etc., shall utilize space made available at sole discretion of the General Contractor in the new building, or store materials off the site in a bonded warehouse. Subcontractor is responsible for providing the materials and installation of their storage spaces.
57. Subcontractor is required to submit an insurance certificate for any materials that are requested to be billed for but are stored off-site. Includes pictures of materials as requested.
58. Temporary structures, sheds, trailers, and material storage shall be arranged in a safe manner to avoid interfering with construction, public access or the General Contractor's operations.
59. All locations of temporary structures, sheds, trailers and material storage shall be approved in advance by the General Contractor. And shall be constructed of fire rated material.
60. Subcontractor shall relocate his temporary structures, sheds, trailers and materials in storage as often as required for construction progress as directed by General Contractor's Superintendent.
61. The General Contractor, on a priority basis, will allocate storage space to the Subcontractors.
62. Upon completion of work, or sooner if directed by the General Contractor, each Subcontractor shall remove his temporary structures and sheds and remove all debris and rubbish and place the area in clean and orderly condition.
63. The Concrete Frame Subcontractor shall provide temporary guardrails at the building floor perimeters and openings. These guardrails shall comply with the requirements of Section 1926.500 OSHA and other sections as appropriate. These temporary guardrails shall be left in place after completion of the structural frame for the use of other Subcontractors. The General Contractor shall maintain said guardrails (see line item #15). All other protection and safety barricades, devices, covers, etc., including all roof areas, shall be provided by each Subcontractor as it relates to the safe conduct of his work in accordance with all the local, state, and federal regulations.
64. Subcontractor shall provide General Contractor a copy of Subcontractor's "Drug Free Workplace Policy". Policy shall meet or exceed General Contractor's Drug Free Work Place Policy (DFWP).
65. Subcontractor will submit daily manpower reports to General Contractor's Project Superintendent by 10:00 a.m. daily.
66. Subcontractor is responsible for checking his correspondence out-box located in the General Contractor's field office daily.
67. All Subcontractors shall be responsible for any excavation and backfill of ditches required for their work. Backfill and compaction shall be in accordance with contract specifications.
68. Material and personnel hoist to be provided by the Contractor. Subcontractor will coordinate availability and use of hoist with the Project Superintendent.
69. No work is to be performed before 7:00 a.m. and after 7:00 p.m. Monday through Saturday or all day on Sundays unless Subcontractor obtains the appropriate after hours permit from the District of Columbia.

1.(e).  SUBCONTRACT EXCLUDES:
   1. All painting.
   2. Power Company fees for electrical service.
   3. Plywood for telephone and CATV equipment.
   4. All motor starters (but subcontractor is to connect all wiring).
   5. All primary duct bank and feeders (by PEPCO).
   6. Range and dryer pigtails.
   7. Bath fans (but subcontractor is to wire to bath switch).
   8. Telephone company fee.
   9. Temperature control wiring and conduit.

   10. CATV and telephone system backbone cabling and equipment.
   11. Disposals, dishwashers, microwaves, refrigerators, and washer/dyer units.
   12. Lightning protection.
   13. "Hi-Rise" requirements for fire alarm system.

1.(f).   SUBCONTRACTOR shall submit required shop drawings in <u>eight (8) copies</u> for Architect's approval within <u>fourteen (14) calendar days</u> of subcontract date. Subcontractor shall furnish his own ladders, scaffolding, drop cloths, hoisting facilities, shall protect and be responsible for other finished work in the environs of his activities and shall remove from the site all debris caused by his operations. Work shall be performed when called for by the job superintendent.

1.(g).   Performance and Payment Bonds <u>**are required.**</u>

2. (a) Subcontractor shall begin the work covered by this contract as soon as the construction upon which said work is to be done is ready for said work, and shall carry on said work promptly, efficiently and at a speed that will not cause delay in the progress of Contractor's work or other portions of the work carried on by other subcontractors. Subcontractor shall prosecute certain portions of the work in preference to others, if so ordered by Contractor, and shall perform all work in accordance with such time schedules as Contractor may establish during the course of the work. Contractor may need to modify job schedules during the course of the work, and Contractor does not warrant that Subcontractor's work can be performed at the time shown on any particular job schedule. Subcontractor shall at all times during performance be considered to be familiar with any and all schedules and accept said schedules.

(b) Subcontractor shall be bound to the General Contractor by the same liquidated damage provisions which bind the General Contractor to the Owner.

(c) Subcontractor is bound to the Contractor in the same way and under the same terms and conditions as the Contractor is bound to the Owner by the General Contract. Subcontractor agrees to conform with all provisions of the General Contract and assumes toward the Contractor the same rights, duties, obligations and liabilities as the Contractor has assumed to the Owner, but as limited to the Scope of the work shown herein. Any inconsistencies between the General Contract and this Subcontract shall be governed by this Subcontract.

(d) Contractor shall not be liable to Subcontractor for any delay to Subcontractor's work resulting from the act, negligence or default of the Owner or the Architect, or by reason of fire or other casualty, or on account of riots, strikes or other combined action of the workmen or others, or on account of any acts of God or any other cause beyond Contractor's control; or on account of any circumstances caused or contributed to by Subcontractor.

(e) Contractor shall not be liable to the Subcontractor for any delay, whether foreseeable or not, occurring beyond Contractor's control or for any delay caused by the Owner, any of its employees, agents or representative, any other subcontractors or suppliers or any third parties, except as otherwise expressly provided herein. Contractor shall have the right, at any time and for any reason, to delay or suspend the whole or any part of the work herein contracted for and the Subcontractor expressly understands and agrees that it shall not be entitled to any monetary compensation whatsoever for any delay or suspension ordered or caused by Contractor and that a time extension only shall be granted for such delays, even if such delays or suspensions: (1) are of a kind not contemplated by the parties; (2) amount to an abandonment of contract; or (3) are caused by active interference.

(f) Subcontractor shall submit written notice of any delay or time extension request in the manner provided in the Contract Documents, but in no event later than seven (7) days after the occurrence of the event given rise to the delay, regardless of the cause of the delay. To the extent Subcontractor seeks a time extension and/or increased costs for such delay, within seven (7) days after giving notice Subcontractor shall fully quantify and provide full supporting documentation and information of the delay. Failure to provide timely written notice shall constitute a waiver of Subcontractor's legal rights, as also addressed elsewhere in this Subcontract.

(g) Time is of the essence in the performance of this Subcontract.

(h) Subcontractor shall fully cooperate and coordinate its work with the work of Contractor and other Subcontractors, shall carefully fit its work to such other work as directed by Contractor, and shall not commit or permit any act which will interfere with the performance of other work.

(i) The submittal of shop drawings, or other affirmative acts by the Subcontractor prior to return of a signed, formally accepted copy of this subcontract shall constitute acceptance of this subcontract.

3. (a) Subcontractor has read and is thoroughly familiar with said Contract Documents and agrees to be bound to Contractor by the terms of said Contract Documents insofar as they relate in any part or in any way to the work undertaken herein, and to assume towards Contractor, in connection with the work covered by this subcontract, all of the obligations and responsibilities which Contractor by those documents assumes towards the Owner or anyone else.

(b) Subcontractor shall be responsible for determining for himself the field dimensions, material and labor requirements relating to his work and shall not rely on estimates or statements of Contractor's employees with respect to such matters.

4. (a) The work included in this Contract shall be performed under the direction of said Architect and Contractor. Architect's decisions as to the true construction and meaning of the drawings and specifications shall be final. Subcontractor shall conform to and abide by any additional specifications, drawings or explanations furnished by the Architect to detail and illustrate the work to be done.

(b) If the proper performance of any item of work by Subcontractor depends upon the proper performance of any item of work by Contractor or another Subcontractor whose work precedes in time the work of the Subcontractor, Subcontractor shall, prior to commencement of his work, report any deficiencies of such preceding work to Contractor in writing, and Subcontractor's commencement of work without having reported any such deficiency shall constitute an admission by Subcontractor that such preceding work was properly done and shall not be entitled to any additional compensation for the proper performance of his work regardless of the condition of such preceding work.

5. (a) NO ALTERATIONS OR CHANGES SHALL BE MADE IN SUBCONTRACTOR'S WORK NOR SHALL SUBCONTRACTOR PERFORM ANY EXTRA WORK EXCEPT UPON CONTRACTOR'S WRITTEN ORDER. For the purpose of this provision, "Changes" shall be construed broadly so as to include changed work, extra work, resequencing, modifications, work stoppages, acceleration, disruption and anything else that Subcontractor alleges to be materially different from the planned scope, means or methods of its work. Subcontractor shall make all alterations, changes, additions and deletions to the work required by Contractor without nullifying this agreement, at reasonable additions or deductions from the price herein, pursuant to Contractor's written orders. Should the parties hereto be unable to agree as to the value of the work to be changed, added or omitted, the Subcontractor shall proceed with the work promptly under the written order to Contractor from which order the stated value of the work shall be omitted, and the determination of the value of the work shall be deferred.

(b) Subcontractor shall submit proposals for changes, alterations, or extra work in the manner provided by the Contract Documents or as instructed by Contractor. "Subcontractor's overhead and profit on additive changes in the Work shall not exceed a combined total of fifteen percent (15%) of the direct cost of the changed Work to the Subcontractor, providing that the Subcontractor performs the additional Work with its own forces. Where such added Work is further subcontracted, the Subcontractor shall be limited to a total markup of five percent (5%) on all Sub-subcontractor costs at any tier."

(c) Subcontractor shall submit to the Contractor in writing any claims for increased costs or time extensions arising out of the Project in the manner provided in the Contract Documents, but in no event shall Subcontractor submit such claims later than seven (7) days after the occurrence of the event giving rise to the claim. The term "Claim" as used herein shall include, without limitation, claims for changes, alterations, extra work, delays, acceleration, disruption and lost productivity. Failure to provide timely written notice shall constitute a waiver of Subcontractor's legal rights, as also addressed elsewhere in this Subcontract.

(d) Should Owner or Architect delete, alter or change any of Subcontractor's work, reject any work or material furnished by Subcontractor, terminate all or part of the work covered by this Contract, Subcontractor shall look exclusively to Owner for any additional compensation or damages; and Subcontractor agrees that Contractor shall in no event be liable to Subcontractor in excess of the payments made by Owner with respect thereto.

6. (a) Disputes arising out of Owner acts, omissions or responsibilities shall be resolved in accordance with the disputes procedure(s) in the Contract Documents. Subcontractor shall be entitled to an equitable adjustment of the Contract sum or time of performance only to the same extent and according to the same provisions as Contractor's equitable adjustment from the Owners. Subcontractor's allocable share of Contractor's equitable adjustment shall be fairly and reasonably determined by Contractor after allowance for Contractor's cost of presenting and recovering the claim including legal fees, normal overhead and profit and apportionments to other affected Subcontractors. Under no circumstances shall Subcontractor's entitlement exceed the Contractor's entitlement after deduction of the expenses and costs described above. Contractor shall have no direct liability to the Subcontractor except to give the Subcontractor the opportunity to exercise Contractor's rights in accordance with the Contract Documents. The Subcontractor shall be required as a condition precedent to the submission of any claim against the Owner to certify its claim in accordance with any and all certification requirements in the Contract Documents. The Subcontractor agrees to indemnify Contractor and hold it harmless from, for and against any defects or misrepresentations in the Subcontractor's certifications, including any relating to cost or pricing data.

(b) Any failure by Subcontractor to provide timely written notice, proposals, quantification, support or related information to Contractor pursuant to a change, alteration, extra work, delay or claim shall constitute a waiver of Subcontractor's rights to any time or compensation for the change, alteration or extra work. "Change" shall include claims for disruption, lost productivity, or similar impacts to Subcontractor's scope of work.

(c) This paragraph intentional left blank.

(d) In the event that arbitration is provided for in the Contract Documents for disputes between the Owner and Contractor, the Subcontractor specifically agrees to submit its claims arising out of any Owner acts, omissions or responsibilities to any such arbitration proceeding as may occur between the Owner and Contractor. The Subcontractor shall be given the opportunity to confer with Contractor in the selection of arbitrators, unless the dispute is solely one between the Owner and the Subcontractor, in which event the Subcontractor may make the selection of arbitrators in Contractor's name.

(e) In consideration of payment by Contractor to the Subcontractor of $25.00, such payment to be made at the time of Contractor's exercise of its option to arbitrate as provided below. All disputes between Contractor and the Subcontractor which do not involve the Owner's acts, omissions or responsibilities, shall at Contractor's sole option be resolved either by litigation in a court of competent jurisdiction or by arbitration in accordance with the construction industry arbitration rules of the American Arbitration Association then obtaining. Contractor shall exercise such option by commencement of appropriate litigation or arbitration proceedings against Contractor, Contractor shall be entitled to exercise its option to elect arbitration at any time before the last day to file an answer or other responsive pleading to the

Subcontractor's summons and/or complaint. Upon exercising its option to arbitrate, Contractor's election to arbitrate shall be irrevocable and the decision of the arbitrators shall be final and binding upon the parties.

(f) The Subcontractor agrees that any arbitration or litigation proceedings between it and Contractor may at Contractor's sole option be consolidated with any arbitration or litigation proceedings pending between Contractor and the Owner. The Subcontractor specifically agrees that any dispute between it and either the Owner or Contractor shall not interfere with the Subcontractor's progress of its work in any manner, and that the Subcontractor shall proceed with its work as ordered, pending resolution of the subject claim.

7. Subcontractor shall provide sufficient safe and proper facilities at all times for the inspection of the work by Contractor, the Architect or their authorized representatives, and shall, within twenty-four (24) hours after receiving written notice from Contractor to that effect, proceed to take down all portions of the work and remove from the grounds and buildings all material, whether worked or unworked, which the Architect or Contractor shall condemn as unsound or improper or as failing to conform in any way to the Contract Documents, and shall make good all such work condemned and all other work damaged or destroyed in removing or making good such condemned work. However, Subcontractor shall not remove any other material from the building site without Contractor's written permission.

8. Subcontractor shall at all times supply adequate tools, appliances and equipment, a sufficient number of properly qualified workmen and a sufficient amount of materials and supplies of proper quality to prosecute said work efficiently and promptly, and shall promptly pay for all materials purchased, and shall pay all workmen each week, and at Contractor's request shall obtain and furnish Contractor weekly with signed receipts from all workmen, showing the date of payment, amount paid, number of hours paid for, the days on which said work was performed, the classification of the labor so paid, and the rate of wage per hour paid, and at Contractor's request shall supply Contractor weekly with a reasonable number of copies of payroll verified by Subcontractor. At Contractor's request, Subcontractor shall furnish Contractor receipted invoices or affidavits from appropriate parties evidencing full payment by Subcontractor and his subcontractors for all materials and supplies used in the performance of the work.

9. (a) Subcontractor agrees to comply with all laws, regulations and ordinances in effect at the location of the work and agrees to indemnify and hold Contractor and Owner harmless from all fines or damages arising from Subcontractor's failure to fully comply with all workmen and public safety laws, regulations or ordinances. Subcontractor shall secure and pay for all necessary permits and licenses. Subcontractor shall pay all taxes and contributions to any unemployment, social security, pension, old age retirement or similar funds required for his employees and shall furnish Contractor evidence of such payment. If Subcontractor does not present such evidence, Contractor may pay such amounts and offset them from sums due Subcontractor.

(b) In the event that any labor dispute, picketing or strike against Subcontractor prevents or interferes with the performance of the work by Contractor, Subcontractor or any other parties on the project, or in the event that any labor dispute, picketing or strike against Contractor or any other party on the project prevents or interferes with the performance of the work by the Subcontractor, Contractor may take over the Subcontractor's work in the manner provided in Paragraph 10 hereof.

10. (a) Should Subcontractor at any time refuse or neglect to supply a sufficient number of properly qualified workmen or a sufficient quantity of materials of proper quality, or abandon the work or fail in any respect to prosecute the work covered by this contract with promptness and diligence, or fail in the performance of any of the agreements herein contained, (and Contractor's finding and judgment with respect thereto shall be final and bind Subcontractor absolutely), Contractor may at its option, after notice to Subcontractor, provide any such labor and materials and deduct the cost thereof from any money then due or thereafter to become due to Subcontractor under this contract or otherwise; or Contractor may, at its option terminate this contract and, for the purpose of completing the work covered by this contract, Contractor shall have the unqualified and unrestricted right to take possession of all the materials, supplies, equipment, tools, appliances, and operating and performance related documents belonging to Subcontractor stored or in possession of Subcontractor at the job site, and Contractor may either complete said work itself or may employ, or contract with, any other person or persons, to complete the work and provide the material therefor; and in case of such termination of this contract, Subcontractor shall not be entitled to receive any further payment under this contract until said work shall have been finished completely and payment therefor made by the Owner, at which time if the unpaid portion of the amount to be paid under this contract exceeds the charges, expenses and damages sustained by the Contractor in completing the work or as a result of such default, such excess shall be paid Contractor to Subcontractor, but if such charges, expenses and damages shall exceed said unpaid portion, Subcontractor shall pay the difference to Contractor.

(b) The Contractor shall have the right to terminate this agreement for its own convenience, for or without any reason whatsoever, by giving the Subcontractor notice of such termination, which shall be effective upon the Subcontractor's receipt thereof. Termination for default under paragraph 10a above, if wrongfully imposed, shall be treated as a termination for convenience. Any termination for convenience settlement with the Subcontractor shall be accomplished pursuant to the provisions, if any, governing the Contractor's termination for convenience by the Owner under the Contract Documents. If there are no termination for convenience provisions in the Contract Documents, or if for any reason they can not be applied, then the Subcontractor shall be paid the lesser of either the actual cost of work and labor in place, plus five percent (5%), or a pro rata percentage of the Subcontract price equal to the percentage of completion for the Subcontractor's work as approved by Contractor in no event shall the Subcontractor be entitled to anticipated profits on unperformed portions of the work.

11. (a) The Subcontractor agrees to assume the entire responsibility for and shall defend, indemnify and hold harmless Contractor and Owner, and all of the agents, servants and employees of Contractor and Owner, from all demands, claims, liability, judgments and expenses (including attorney's fees and court costs) because of personal injury to or death of any person, or loss of or damage to property of any person, (including the Subcontractor, any subcontractor of the Subcontractor and the agents, servants and employees of the Subcontractor and sub-Subcontractor) which in any way arises out of, is connected with or incident to the work performed or to be performed by the Subcontractor under this contract or by any subcontractor of the Subcontractor, including any circumstances in which the Contractor or Owner, or both, or any agent, servant or employee of Contractor or Owner, is concurrently negligent with the Subcontractor, any subcontractor of Subcontractor or any agent, servant or employee of the Subcontractor or sub-Subcontractor.

(b) Prior to commencement of work, Subcontractor shall furnish Contractor certificates showing that Subcontractor has, and will maintain throughout the Contract, insurance in companies acceptable to Contractor of the following types and amounts (or such additional amounts Owner may require):

    1. Worker's Compensation and Employers' Liability Insurance as required by the state in which this work is performed.

    2. Automobile Liability Insurance with a combined single limit in the amount of $1,000,000.

    3. Public Liability Insurance - (Comprehensive General Liability Policy) Including premises - Operations coverage, contractors protective coverage, completed operations coverage and contractual liability coverage.

        a. Limits of Liability required on the above coverages:

            Bodily Injury Liability and Property Damage:

            $2,000,000 each occurrence
            $2,000,000 annual aggregate
            $2,000,000 products/completed operations aggregate
            $2,000,000 personal injury and advertising limit

            Note: the aggregate limit shall be written on a per project or location basis.

        b. Completed operations coverage included in the above policy shall continue in effect during the warranty period following the acceptance of the complete project by the Owner for a period of at least three (3) years following final payment.

(c) Upon the signing of this contract, the Subcontractor shall submit Certificates of Insurance in duplicate evidencing all of the above coverage. These Certificates shall name both the Contractor, S.E. Foster Construction Company, and Owner, Columbia Heights Ventures Parcel 15, LLC, as additional Insured. Said certificates shall provide at least 30 days written notice to Contractor of cancellation or material change.

(d) Neither the Subcontractor nor its Insurer shall have any claim against the Owner to the extent the claim is or should have been covered by the Subcontractor's Insurance.

12. Subcontractor agrees to indemnify and save harmless Contractor from any and all claims or suits for infringement of patents, or violation of patent rights by Subcontractor, and further agrees to pay all loss and expense incurred by Contractor by reason of any such claims or suits, including counsel fees.

13. Subcontractor agrees to abide by Contractor's decision as to the allotment of all storage and working space at the building site or in the buildings thereon.

14. Subcontractor shall remove from the building or buildings, as often as directed by Contractor, all rubbish, debris or surplus materials which may accumulate from the prosecution of the work covered by this contract, clean walls, floors and other finished surfaces soiled by Subcontractor, repair all property damage caused by Subcontractor's work or workmen, and should Subcontractor fail to do so upon notice, Contractor may, at its option, cause the same to be removed at Subcontractor's expense.

15. No payment made under this contract shall be construed to be an acceptance of defective work or improper materials.

16. Neither Subcontractor nor any of its subcontractors shall employ any workmen whose employment on the work covered by this contract is objected to by Contractor.

17. (a) Subcontractor agrees to turn said work over to Contractor in good condition and free and clear from all claims, encumbrances and liens for labor, services, or materials, and to protect and save harmless Contractor and Owner from all claims, encumbrances and liens growing out of the performance of this work and all maintenance required under the Contract Documents, and should Subcontractor, during the progress of said work, or at any time thereafter, fail to pay for all labor, services and materials used or purchased for use in the prosecution of said work, Contractor, may at its option, and without notice to Subcontractor, pay all such claims whether or not claimant has perfected a lien or bond claim and charge the amounts thereof to Subcontractor. In the event suit is filed by any person, firm or corporation asserting a claim or lien for labor, services or materials used or purchased for use in the work covered by this contract, Subcontractor will, at its own cost and expense, including counsel fees, defend such suit and pay any judgment rendered therein.

(b) Subcontractor guarantees his work against all defects of material or workmanship, and guarantees that such work shall be in strict compliance with the Contract Documents for the period of time specified in the Contract Documents; if no guarantee is called for by the Contract Documents, Subcontractor's guarantee shall be for a period of two (2) years from the date of acceptance of the project by the Owner, such guarantee to include all costs of repairing and replacing Subcontractor's work and other parts of the project damaged by the failure of Subcontractor's work to comply strictly with Contract Documents. Subcontractor further agrees to indemnify and save harmless Contractor from all claims resulting from or arising out to such defects of material or workmanship, or failure of his work to comply strictly with the Contract Documents. This guarantee is in addition to any other guarantees and warranties provided by law.

(c) Should Subcontractor fail to perform any of its responsibilities or obligations under the Contract Documents, Contractor may, at its sole discretion, undertake to perform same. In such event, Subcontractor shall be responsible to Contractor for all related costs, damages and expenses, including, without limitation, reasonable attorneys fees.

18. If performance and payment bonds are required under this contract, they shall be executed by a corporate surety and in a form satisfactory to the Contractor and shall provide that Subcontractor, as principal and its Surety are held and firmly bound unto Contractor, in the full amount of this Subcontract upon the terms and conditions and in accordance with the provisions of such bond forms. The original bonds, accompanied by a certified power of attorney of the Surety's attorney-in-fact, shall be delivered to Contractor prior to commencement of work hereunder. Even if no bond is initially required under this Subcontract, if Contractor subsequently deems it appropriate, it may require a bond of Subcontractor, and a change order will be issued for the amount of the bond premium.

19. Subcontractor shall not sublet, assign or transfer this contract or any work or payments due thereunder without Contractor's written consent, and such consent shall not relieve Subcontractor of its obligations hereunder.

20. (a) On the 20th day of each month Subcontractor shall present to Contractor a statement of the work done during the preceding month, which statement, when checked and approved by Contractor, will be paid within five (5) days after receipt of payment from Owner, provided that Contractor may, at its option on each payment, retain 10% or the percentage specified in the Contract Documents, of each estimate until final payment, which shall be made after completion of the work covered by this contract and written acceptance thereof by the Architect, and full payment therefore by Owner. Subcontractor agrees that Owner's payment to Contractor of all progress payments and final payment for any work performed by Subcontractor, other Subcontractors and Contractor shall be an express condition precedent to any obligation of Contractor to make any progress payments, retainages, or final payment to Subcontractor.

(b) Any payments due Subcontractor hereunder may be withheld by Contractor in the event Subcontractor is in default of any of its obligations hereunder and such amounts may be retained by Contractor until such event of default is corrected.

(c) Contractor agrees to pay Subcontractor for said work the sum of Three Million One Hundred Seven Thousand Dollars ($3,107,000.00) subject to additions and deductions as herein provided, and such sum shall be paid by Contractor to Subcontractor as the work progresses in monthly installments as described in Paragraph 20(a).

21. Contractor shall not be responsible for any loss or damage to the work to be performed and furnished under this Subcontract, however caused until after final acceptance thereof by Contractor and the Architect. Nor shall Contractor be responsible for loss of or damage to materials, tools, equipment, appliances or other personal property owned, rented or used by the Subcontractor or anyone employed by it in the performance of the work, however caused.

22. This contract and the Contract Documents, insofar as they relate in any part or in any way to the work undertaken herein, constitute the entire agreement between the parties hereto, and it is expressly understood and agreed that there are no agreements or promises by and between the parties, except as aforesaid, and that any additions thereto or changes therein shall be in writing.

23. Anything to the contrary herein notwithstanding, Contractor may, in its sole discretion, at any time and from time to time, prepay to Subcontractor all or any part of any amounts due and owing or to become due and owing hereunder.

24. In performance of the work covered hereby Subcontractor agrees to comply with and abide by, and to cause his agents and any subcontractor of or under Subcontractor to comply with and abide by all applicable laws, regulation, standards and orders relating to occupational safety and health, including without limitation, the Occupational Safety and Health Act of 1970 (29 U.S.C. 651) and all standards, regulations and orders issued pursuant thereto; and Subcontractor agrees to indemnify, save harmless and defend Contractor and / or Owner against any and all liability, claims, demands, costs or judgments occasioned, contributed to or in any way caused, in whole or in part by failure of Subcontractor, his agents or any subcontractor of or under Subcontractor to so comply with and abide by such laws, regulations, standards and / or orders, including, without limitation, all fines, civil and criminal penalties, expenses of correction, damages and losses due to forced work stoppage, and court costs and attorneys' fees incurred in the reasonable defense against such fines, civil and criminal penalties, expenses, damages and losses, and orders to stop work.

IMPORTANT!

CONTRACTOR MUST HAVE IN ITS POSSESSION REQUIRED INSURANCE CERTIFICATES AND THE PROPERLY SIGNED ACCEPTANCE COPY OF THIS AGREEMENT BEFORE ANY INVOICES WILL BE APPROVED FOR PAYMENT. DURING THE COURSE OF THE WORK PROPERLY EXECUTED ACCEPTANCE COPIES OF ADDITIVE AND / OR DEDUCTIVE CHANGE ORDERS MUST BE DELIVERED TO CONTRACTOR BEFORE INVOICES WILL BE APPROVED FOR PAYMENT.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals on the day and year first above written.

WITNESS: _____     CONTRACTOR: S.E. Foster Construction Company

1415 N. Taft Street, Suite 100
Arlington, VA 22201                  By: _____
Address                              Michael A. Foster, President

WITNESS: _____     SUBCONTRACTOR: Spartan Electric Company

10097 Tyler Place
Suite 9
Ijamsville, MD 21754                 By: _____
Address